JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:   CV 18-01017 SJO (SHKx)**          **DATE:  October 21, 2019**

**TITLE:      C.Q. v. River Springs Charter Schools**

========================================================================
**PRESENT:  THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                            Not Present
Courtroom Clerk                             Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**          **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                 Not Present

========================================================================
**PROCEEDINGS (in chambers):  ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR
ATTORNEY'S FEES** (ECF No. 92); **DENYING DEFENDANT'S AMENDED MOTION FOR
ATTORNEY'S FEES** (ECF No. 122); **DENYING DEFENDANT'S MOTION FOR SANCTIONS**
(ECF No. 138); **DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S MOTION FOR
SANCTIONS** (ECF No. 140).

This matter comes before the Court on four pending motions: Plaintiff C.Q.'s ("Plaintiff" or "C.Q.")
Motion for Attorney's Fees filed on July 1, 2019 (ECF No. 92); Defendant River Springs Charter
Schools' ("Defendant" or "RSCS") Amended Motion for Attorney's Fees filed on August 12, 2019
(ECF No.122); Defendant's Motion for Sanctions filed on September 3, 2019 (ECF No. 138); and
Plaintiff's Motion to Strike Defendant's Motion for Sanctions filed on September 4, 2019 (ECF No.
140).  The Court found these matters suitable for disposition without oral argument. *See* Fed. R.
Civ. P. 78(b).  For the reasons stated below, the Court **GRANTS IN PART** Plaintiff's Motion for
Attorney's Fees and **DENIES** the remaining three motions.

I.      FACTUAL AND PROCEDURAL BACKGROUND

        A.      Background and OAH Proceedings

Plaintiff C.Q. is a twelve-year-old student in the seventh grade enrolled at RSCS who suffers from
numerous disabilities, including Autism Spectrum Disorder, Specific Learning Disabilities,
Pervasive Developmental Disorder, Obsessive Compulsive Disorder, ADHD, Depressive Disorder,
and Generalized Anxiety Disorder. (Complaint ¶¶ 3, 16, ECF No. 2.) Plaintiff's condition requires
that she receive education in a highly structured learning environment. (Compl. ¶ 4.)

On August 4, 2017, RSCS developed an Individual Education Plan ("IEP") for Plaintiff which
provided that she would receive special education services from a Non-Public School ("NPS")
from June 14, 2017 to June 14, 2018. (Compl. ¶ 17.) Beginning On June 14, 2017, Plaintiff
attended Prentice School in Tustin, California, receiving the special education services outlined
in her IEP. (Compl. ¶ 18.) While receiving these services, Plaintiff's academic skills increased

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  **CV 18-01017 SJO (SHKx)**        DATE:  **October 21, 2019**

rapidly, progressing more than two grade-levels over the course of the academic year. (Compl. ¶ 20.)

On March 2, 2018, RSCS notified C.Q.'s parents that she would be removed from Prentice School and instead placed in a "home-instruction charter school" by the name of Flabob Airport Preparatory Academy. (Compl. ¶ 21.) Plaintiff contends that Flabob would not be able to provide her with the services outlined in her IEP and that it would not meet the IEP's requirement that C.Q. be placed in a NPS for the 2017-2018 academic year. (Compl. ¶ 22.)

Over her parents' objections, RSCS informed C.Q. on March 21, 2018 that it would be removing her from Prentice School. (Compl. ¶ 23.) That same day, Plaintiff's parents filed an administrative complaint with the California Office of Administrative Hearings ("OAH") pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA") and sought and order for Stay-Put to maintain C.Q.'s placement at Prentice during the pendency of the administrative process. (Compl. ¶ 24.) Two days later, RSCS ceased all funding for C.Q.'s placement at Prentice School; however, the school permitted C.Q. to remain during the pendency the administrative law judge's ("ALJ") determination. (Compl. ¶¶ 25-26.)

On April 11, 2018, the ALJ denied Plaintiff's First Amended Motion for Stay Put on the basis that RSCS intended the placement at Prentice to be for a "finite period of time." (Compl. ¶ 28.) Plaintiff subsequently filed a Motion for Reconsideration, which was denied on April 25, 2018. (Compl. ¶ 28.)

On April 27, 2018, Defendant proposed a settlement offer of $22,000 for: (1) independent educational evaluations ("IEE"), (2) compensatory education provided by a certified non-public agency(ies) ("NPA") of parents' choosing, (3) Prentice tuition reimbursement, (4) mileage reimbursement, and (5) attorneys' fees and costs. (*See* Def.'s Opp'n to Pl.'s Mot. For Att'y Fees, Ex. A.) Plaintiff rejected the offer. (*See* Def.'s Opp'n to Pl.'s Mot. For Att'y Fees 4, ECF No. 132). Defendant's second settlement offer on May 17, 2018 of $45,000 included funding for: (1) tuition at Prentice for the balance of the 2017-2018 school-year and the 2018-2019 school year, (2) related services at Prentice for the balance of the 2017-2018 school-year and the 2018- 2019 school year, (3) extended school year ("ESY") services for the 2018 summer; and (4) reasonable attorneys' fees and costs. (*See* Def.'s Opp'n to Pl.'s Mot. For Att'y Fees, Ex. B.)

Plaintiff rejected both offers and instead opted for the administrative proceedings, which lasted 11 days and stretched from late September 2018 to early November 2018. (*See* Evidence in Support of Pl.'s Mot. for Att'y Fees, Ex. A ("ALJ Decision") 2, ECF No. 92-3.)  The parties presented the ALJ with the following issues:

**Student's Issues**

1. Did River Springs deprive Student of a free appropriate public education from March 21, 2016, to August 2017, by failing to provide appropriate present levels of performance, goals, instruction and services to address Student's unique needs in

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 18-01017 SJO (SHKx)</u>         **DATE:** <u>October 21, 2019</u>

the following areas: (a) occupational therapy; (b) speech; (c) specialized academic instruction; (d) educationally related mental health; (e) behavior; and (f) social skills?

2. Did River Springs deprive Student of a FAPE (Free Appropriate Public Education) from March 2016 through May 21, 2018, by reason of a material failure to implement the following services:

a) The specialized academic instruction offered in the individualized education programs of March 30, 2016, April 26, 2016, January 12, 2017,  March 23, 2017, April 28, 2017, and May 12, 2017; and

b) The specialized academic instruction, occupational therapy, speech and language, and counseling services offered in the August 4, 2017 IEP, during the period from April 19, 2018, through May 21, 2018?

3. Did River Springs deprive Student of a FAPE by failing to provide all of Student's educational records in response to Parents' requests, including the requests made in March and September 2016, and May 2018?

4. Did River Springs deny Student a FAPE by offering placement at Flabob Airport Preparatory Academy in the February 9, 2018 IEP?

5. Did River Springs deny Student a FAPE by predetermining the February 9, 2018 IEP's offer of placement?

**River Springs' Issue**

6. Did the February 9, 2018 IEP offer Student a FAPE in the least restrictive environment, such that River Springs may implement the IEP without Parents' consent?

(ALJ Decision 2-3.)  In a comprehensive decision, the ALJ ruled in Plaintiff's favor on issues 1(c), 2(a), and 2(b), holding that Defendant "fail[ed] to offer an appropriate amount of specialized academic instruction to address Student's math deficits and . . . fail[ed] to provide the specialized academic instruction for a majority of the 2016-2017 school year [, and thus] deprived Student of an educational benefit."  (ALJ Decision 63.)

The ALJ awarded Plaintiff 45 hours of compensatory education in English language arts and 83 hours of compensatory education in mathematics, totaling 128 hours of compensatory education. (ALJ Decision 67.)  The ALJ noted that the parents could choose the non-public agency or non-public school, and then RSCS would contract with that entity at a rate not to exceed $75 per hour. (*Id.*)  Plaintiff's parents were also entitled to mileage reimbursement for travel to and from the compensatory education sessions at a rate of $0.545 a mile. (*Id.*)

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  <u>CV 18-01017 SJO (SHKx)</u>        DATE:  <u>October 21, 2019</u>

However, the ALJ did not award Plaintiff placement at Prentice, because Defendant had offered Plaintiff a non-Prentice FAPE in a February 9, 2018 IEP at Flabob.  (ALJ Decision 67.)  The ALJ explained that Defendant was not obligated to continue funding Plaintiff's placement at Prentice.  (*Id.*)

B.    <u>Stay Put Litigation in Federal Courts</u>

On May 11, 2018—before the ALJ's Decision on January 14, 2019 and while the administrative proceedings were still pending—Plaintiff filed an *ex parte* application for a temporary restraining order for a Stay Put order requiring Defendant to continue funding Plaintiff's placement in the Prentice School pending the OAH proceedings.  (*Ex Parte* App., ECF No. 4.)  The Court denied the motion on the grounds that Plaintiff failed to file the administrative record with the Court.  (Min. Denying *Ex Parte* App., ECF No. 13.)  The Court allowed Plaintiff to file a renewed application for a temporary restraining order with the administrative appeal.  (Min. Denying *Ex Parte* App.)  Plaintiff filed the renewed *ex parte* application for a temporary restraining order on May 14, 2018.  (Amendment to *Ex Parte* App., ECF No. 16.)  On May 18, 2018, the Court granted Plaintiff's request for a Stay Put at Prentice during the pendency of the litigation.  (Order Granting Pl.'s *Ex Parte* 5, ECF No. 28.)  Defendant appealed the Court's order, but the Ninth Circuit affirmed.  (*See* Memorandum from Ninth Circuit, ECF No. 78.)

Also on May 11, 2018, Plaintiff filed a Complaint containing three causes of action:  (1) a claim for declaratory relief that Prentice is Plaintiff's Stay Put; (2) injunctive relief that Prentice is Plaintiff's Stay Put; and (3) for disability discrimination under 29 U.S.C. § 794(a).  (*See generally* Compl.)  Plaintiff then amended Plaintiff's Complaint and asserted a sole cause of action for injunctive relief under  20 U.S.C. § 1415(j) that Prentice is Plaintiff's Stay Put.  (*See* First Amended Complaint ("FAC"), ECF No. 80.)  On June 21, 2019, Plaintiff filed a Second Amended Complaint ("SAC"), which contains causes of action for injunctive relief under 20 U.S.C. § 1415(j), and a claim of attorney's fees.  (*See generally* SAC.)  As noted, Plaintiff was granted the requested injunctive relief, and that relief was affirmed by the Ninth Circuit.  (SAC ¶ 15.)  Therefore, Plaintiff's only remaining claim in this case is for attorney's fees.

Both parties filed motions for attorney's fees on the same day.  On July 1, 2019, Plaintiff filed a Motion for Attorney's Fees.  (Pl.'s Mot. for Att'y Fees.)  Defendant opposed Plaintiff's motion on July 8, 2019 (Def.'s Opp'n to Pl.'s Mot. for Att'y Fees, ECF No. 99), and, on August 19, 2019, filed an Amended Opposition to Plaintiff's Motion for Attorney's Fees (Def.'s Amended Opp'n to Pl.'s Mot. For Att'y Fees 12-14).  Plaintiff originally filed a reply brief on July 12, 2019 (Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Att'y Fees, ECF No. 103), and subsequently filed an amended reply brief on August 22, 2019 to Defendant's amended opposition (Pl.'s Amended Reply to Def.'s Amended Opp'n to Pl.'s Mot. for Att'y Fees, ECF No. 135).

Defendant also filed a Motion for Attorney's Fees on July 1, 2019.  (Def.'s Mot. for Att'y Fees, ECF No. 94).  On July 8, 2019, Plaintiff opposed Defendant's motion (Pl.'s Opp'n to Def.'s Mot. for Att'y Fees, ECF No. 98), and Defendant replied on July 15, 2019 (Def.'s Reply to Pl.'s Opp'n to Mot. for Att'y Fees, ECF No. 106).  Defendant then amended its motion for fees, which sparked

JS-6          **UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 18-01017 SJO (SHKx)**      **DATE:  October 21, 2019**

another round of briefing.  On August 12, 2019, Defendant filed an Amended Motion for Attorney's fees.  (Def.'s Amended Mot. for Att'y Fees, ECF No. 122.)  Plaintiff opposed Defendant's amended motion for fees on August 15, 2019 (Pl.'s Opp'n to Def.'s Amended Mot. for Att'y Fees, ECF No. 124), and Defendant filed a reply brief on August 26, 2019 (Def.'s Reply to Pl.'s Opp'n to Def.'s Amended Mot. for Att'y Fees ECF No. 136).

In addition to the briefing on attorney's fees, the parties have briefed a sanctions motion and a motion to strike the sanctions motion.  On August 12, 2019, Defendant filed a Motion for Sanctions.  (Def.'s Mot. for Sanctions, ECF No. 120.)  Plaintiff opposed Defendant's sanctions motion on August 16, 2019.  (Pl.'s Opp'n to Def.'s Mot. for Sanctions, ECF No. 127.)  Based on an issue with service, Defendant voluntarily withdrew the sanctions motion, stating it would re-file the motion at a later date.  (Not. of Withdrawal of Mot. for Sanctions, ECF No. 133.)  Defendant re-filed its sanctions motion on September 3, 2019.  (Def.'s Mot. for Sanctions, ECF No. 138.)  Plaintiff opposed Defendant's motion on September 9, 2019.  (Pl.'s Opp'n to Def.'s Mot. for Sanctions, ECF No. 141.)  Defendant then filed a reply on September 23, 2019.  (Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Sanctions, ECF No. 146.)

On September 4, 2019, Plaintiff filed a Motion to Strike Defendant's Motion for Sanctions.  (Mot. to Strike, ECF No. 140.)  Defendant opposed plaintiff's Motion to Strike on September 10, 2019 (Def.'s Opp'n to Pl.'s Mot. to Strike, ECF No. 144), and Plaintiff replied on September 16, 2019 (Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. to Strike ECF No. 145).

In sum, the motions pending before the Court are: (1) Plaintiff's Motion for Attorney's Fees; (2) Defendant's Amended Motion for Attorney's fees; (3) Defendant's re-filed Motion for Sanctions; and (4) Plaintiff's Motion to Strike Defendant's Motion for Sanctions.

The Court will address all of the pending motions in this order.

II.     <u>DISCUSSION OF ATTORNEY'S FEES MOTIONS</u>

Both parties moved for attorney's fees.  The Court holds that Plaintiff is the prevailing party and entitled to attorney's fees.  Plaintiff's status as the prevailing party precludes Defendant from that designation, so Defendant's Amended Motion for Attorney's Fees is **DENIED**. However, as discussed below, there are a number of reasons to reduce Plaintiff's requested fee award. Therefore, the Court **GRANTS IN PART** Plaintiff's Motion for Attorney's fees.

A.     <u>Legal Standards</u>

The IDEA statutory framework permits district courts, in their discretion, to award attorney's fees. 20 U.S.C. § 1415 (i)(3)(B).  The court may award fees to "a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415 (i)(3)(B)(i)  The statute also permits the court to award attorney's fees to a prevailing educational entity under two scenarios: (1) against the attorney of a parent "who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation," or (2) against a parent or the parent's attorney if the case "was presented for

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 18-01017 SJO (SHKx)          DATE:  October 21, 2019**

any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation."  *Id.*

"[P]laintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal quotation marks omitted).  A prevailing party is not entitled to fees on unsuccessful claims, and "the most critical factor is the degree of success obtained."  *Aguirre*, 461 F.3d at 1118 (quoting *Hensley*, 461 U.S. at 436)).

To calculate the fee award, the court must determine the number of hours reasonably expended on the litigation and multiply that number by a reasonable hourly rate.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Aguirre v. Los Angeles Unified Sch. Dist.*, 461 F.3d 1114, 1121 (9th Cir. 2006) ("[A]ttorney's fees awarded under 20 U.S.C. § 1415 are governed by the standards set forth by the Supreme Court in *Hensley* and its progeny.").  Any award of attorney's fees "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."  20 U.S.C. § 1415 (i)(3)(C).

      B.   <u>Prevailing Party</u>

The first step in analyzing a request for fees is determining which litigant is the "prevailing party." Plaintiff argues that Plaintiff is the prevailing party on the Stay Put issue, in which Plaintiff succeeded in both this Court and on appeal.

In *Termine ex rel. Termine v. William S. Hart Union High School District*, 288 F. App'x 360, 362 (9th Cir. 2008), the Ninth Circuit affirmed the district court's decision finding the plaintiff was the prevailing party in a Stay Put case.  There, plaintiff sought a Stay Put order that plaintiff was entitled to remain at Westmark School, rather than the district's proposed school, during the pendency of the litigation.  *Id.*  Even though the district court did not rule on the Stay Put issue, the plaintiff remained at Westmark School during the litigation, and when the case was tried on the merits, plaintiff prevailed.  *Id.*  The Ninth Circuit described the plaintiff's remaining at Westmark School during the litigation  as "relief that changed the legal relationship between the parties with respect to a significant issue," and noted that the plaintiff "also successfully invalidated [the district's] argument regarding the stay-put placement."  *Id.*

Here, Plaintiff successfully litigated the Stay Put issue, and this Court held that "Prentice School is the designated school for stay-put purposes under 20 U.S.C. § 1415."  (Order Granting Plaintiff's *Ex Parte* TRO, 5.) On appeal, the Ninth Circuit agreed, holding that "the district court did not abuse its discretion in eliminating the homeschool alternative and Flabob and concluding that Prentice was [Plaintiff's] then-current placement. (*See* Memorandum from Ninth Circuit, ECF No. 78.) Plaintiff's success mirrors that in *Termine*.  Just as in *Termine*, where the student's remaining at Westmark School resulted in prevailing party status, so too Plaintiff received a court order (affirmed on appeal) that Prentice was Plaintiff's Stay Put school during the litigation.  This ruling changed the legal relationship between the parties on a significant issue, namely, whether Plaintiff was entitled to remain at Prentice pending the OAH decision.  And just as in *Termine*,

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  **CV 18-01017 SJO (SHKx)**          DATE:  **October 21, 2019**

Plaintiff successfully invalidated Defendant's proposed interim placements in a homeschool alternative or at Flabob. Therefore, Plaintiff is the prevailing party.

Plaintiff did not merely prevail on an issue in this litigation; rather, Plaintiff succeeded on the central issue that Plaintiff pursued in this case: a Stay Put at Prentice pending the ALJ's decision. Plaintiff's Complaint contained three causes of action, including (1) a claim for declaratory relief that Prentice is Plaintiff's Stay Put, (2) injunctive relief that Prentice is Plaintiff's Stay Put, and (3) for disability discrimination under 29 U.S.C. § 794(a).  (*See generally* Compl.)  Plaintiff then amended Plaintiff's Complaint and asserted a sole cause of action for injunctive relief under  20 U.S.C. § 1415(j) that Prentice is Plaintiff's Stay Put, later adding a claim for attorney's fees in Plaintiff's SAC. (*See generally* FAC; SAC.)

While Plaintiff dropped the disability discrimination claim, it is clear from Plaintiff's amended complaints, application for a temporary restraining order, and litigation on appeal that Plaintiff's main purpose in pursuing this case was to obtain the Stay Put at Prentice.  *See A.P. v. Bd. of Educ. for Tullahoma*, 160 F. Supp. 3d 1024, 1033 (E.D. Tenn. 2015) ("Because Plaintiffs' sole objective in filing a lawsuit in this Court was to obtain a stay put order, the Court finds that Plaintiffs obtained not just some relief as to 'any significant issue' but complete relief as to all issues Plaintiff sought in bringing suit in this Court.").

Defendant counters that Plaintiff is not the prevailing party, because the ruling on Plaintiff's TRO was not on the merits.  Defendant cites to case law for the proposition that a TRO merely maintains the status quo pending a ruling on the merits, and because there was no merits ruling here, Plaintiff cannot be the prevailing party.  (*See* Def.'s Opp'n to Pl.'s Mot. For Att'y Fees 12-14.)

In focusing on the TRO context, Defendant misunderstands the nature of a Stay Put.  A Stay Put is a request for interim relief pending the outcome of the case, and it is independent from the result of the litigation.  *See K.D. v. Dep't of Educ.*, 665 F.3d 1110, 1121 (9th Cir. 2011) (noting that the merits of a student's IDEA claim is not connected to the Stay Put provision, which is merely to maintain the status quo).  Therefore, Plaintiff's success on the Stay Put issue completely resolves that issue on the merits, and no further proceedings would affect that decision.  Courts in others circuits have also addressed this issue and reached the same conclusion.  *See, e.g., Douglas v. District of Columbia*, 67 F. Supp. 3d 36, 42 (D.D.C. 2014) (holding that after granting plaintiff a Stay Put, the plaintiff's "Section 1415(j) claim has been fully adjudicated on the merits").

Plaintiff's status as the prevailing party renders futile Defendant's Motion for Attorney's Fees. Defendant's motion appears to be merely an attempt to rehash settled issues (which is evident from Defendant copying and pasting text from previous pleadings), attack Plaintiff's claims as frivolous (which is both procedurally improper and substantively hopeless), and blow off some steam.  In so doing, Defendant failed argue to that Defendant is the prevailing party.  Because Plaintiff is undoubtedly the prevailing party and Defendant failed to argue otherwise, Defendant cannot obtain attorney's fees in connection with this litigation.  *See* 20 U.S.C. § 1415 (i)(3)(B)(i) (awarding fees to an educational agency that is the "prevailing" party).

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   <u>CV 18-01017 SJO (SHKx)</u>          DATE:  <u>October 21, 2019</u>

Therefore, the Court concludes that Plaintiff is the prevailing party and **DENIES** Defendant's Motion for Attorney's Fees.

      C.    <u>Defendant's Statutory Settlement Offers</u>

Defendant argues that Plaintiff should not be entitled to any attorney's fees, because Plaintiff was not substantially justified in rejecting Defendant's settlement offers.  (*See* Def.'s Opp'n to Pl.'s Mot. For Att'y Fees 4-7.)  While Defendant's offers were more favorable to Plaintiff than the ALJ's Decision, the attorney's fees that Plaintiff incurred as of the date of the offers made Plaintiff reasonably justified in rejecting Defendant's settlement offers. Therefore, Plaintiff is entitled to attorney's fees.

      1.    <u>Defendant's Statutory Offers Were More Favorable Than the ALJ's Decision</u>

While IDEA awards the prevailing party attorney's fees,

> fees and costs may not be awarded for services performed subsequent to a written settlement offer if
>
>> (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;
>>
>> (II) the offer is not accepted within 10 days; and
>>
>> (III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

*Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1220-21 (9th Cir. 2016) (quoting 20 U.S.C. § 1415(i)(3)(D)(i)(I)–(III)).  "Notwithstanding subparagraph (D), an award of attorneys' fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer."  20 U.S.C. § 1415(i)(3)(E).

On April 27, 2018, Defendant presented Plaintiff with a global offer of $22,000 for: (1) independent educational evaluations ("IEE"), (2) compensatory education provided by a certified non-public agency(ies) ("NPA") of parents' choosing, (3) Prentice tuition reimbursement, (4) mileage reimbursement, and (5) attorneys' fees and costs.  (*See* Def.'s Opp'n to Pl.'s Mot. For Att'y Fees, Ex. A.)  Defendant's second global offer on May 17, 2018 of $45,000 included funding for: (1) tuition at Prentice for the balance of the 2017-2018 school-year and the 2018-2019 school year, (2) related services at Prentice for the balance of the 2017-2018 school-year and the 2018- 2019 school year, (3) extended school year ("ESY") services for the 2018 summer; and (4) reasonable attorneys' fees and costs. (*See* Def.'s Opp'n to Pl.'s Mot. For Att'y Fees, Ex. B.)

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 18-01017 SJO (SHKx)          DATE:  October 21, 2019**

There is no dispute that Defendant timely made, and Plaintiff timely declined, the settlement offers.  The question remains whether the ALJ's Decision was more favorable than the settlement offers, and, if not, whether Plaintiff's rejection was substantially justified.

In the OAH proceedings, Plaintiff obtained 45 hours of compensatory education in English language arts and 83 hours of compensatory education in mathematics, totaling 128 hours of compensatory education.  (ALJ Decision 67 ¶ 1.)  The ALJ noted that the parents could choose the non-public agency or non-public school, and then RSCS would contract with that entity at a rate not to exceed $75 per hour. (*Id.*)  Plaintiff's parents were also entitled to mileage reimbursement for travel to and from the compensatory education sessions at a rate of $0.545 a mile. (*Id*.)  All told, Plaintiff obtained $9,600.00 in compensatory education in addition to the travel reimbursement.

The Court concludes that the award Plaintiff obtained from the ALJ was not more favorable to Plaintiff than Defendant's settlement offers. Defendant's April 27, 2018 settlement offer was for $22,000, which is roughly $12,000 more than the $9,600 Plaintiff obtained in the ALJ's Decision. The ALJ's award of $9,600 is also outdone by Defendant's May 17, 2018 settlement offer for $45,000.

In addition, Defendant's May 17, 2018 settlement offer included the cost of tuition at Prentice for the 2017-2018 school-year and the 2018-2019 school year.  That was precisely the relief that Plaintiff sought from this Court and from the Ninth Circuit, but which Plaintiff rejected in Defendant's offer. Also, the settlement offer was superior to the ALJ's ruling because Defendant's offer provided for funding at Prentice through the end of the 2019 academic year, whereas the ALJ's Decision did not.  (*See* ALJ Decision 67 (ruling that Plaintiff was not entitled to remain at Prentice for the remainder of the 2019 school year, because Defendant offered Plaintiff a FAPE in a February 9, 2018 IEP at Flabob).)

Therefore, Plaintiff will not be entitled to attorney's fees unless Plaintiff can prove that Plaintiff was substantially justified in rejecting Defendant's offer.

2.     Plaintiff Was Substantially Justified in Rejecting Defendant's Statutory Offers

Plaintiff asserts Plaintiff was substantially justified in rejecting Defendant's settlement offers because they did not include attorney's fees.  (*See* Pl.'s Reply in Support of Mot. for Att'y Fees 2-4.)  A party may be "substantially justified" in rejecting a settlement offer if the offer fails to cover the party's attorney's fees.  *See Beauchamp*, 816 F.3d at 1222; *Adams v. Compton Unified Sch. Dist.*, 2015 WL 12748005, at *5 (C.D. Cal. July 16, 2015) (holding that the plaintiff was justified in rejecting a statutory offer that did not provide for attorney's fees); *Hawkins v. Berkeley Unified Sch. Dist.*, 2008 U.S. Dist. LEXIS 94673 (N.D. Cal. Nov. 20, 2008) (same).

Plaintiff was substantially justified in rejecting Defendant's April 27, 2018 settlement offer of $22,000.  As of April 27, 2018, Plaintiff had billed 65.4 hours at a rate of $400 per hour, totaling

**JS-6**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 18-01017 SJO (SHKx)</u>         **DATE:** <u>October 21, 2019</u>

$26,160.  (*See* Evidence in Support of Pl.'s Mot. for Att'y Fees, Ex. F ("Plaintiff's Bills") 126-27.) Defendant's offer did not cover Plaintiff's accrued attorney's fees, let alone sufficient funds for the substantive relief that Plaintiff sought.  Plaintiff was therefore justified in rejecting that offer because Plaintiff's attorney's fees alone surpassed Defendant's offer by roughly $4,000.

Plaintiff was also substantially justified in rejecting Defendant's May 17, 2018 offer of $45,000, which included $15,000 in attorney's fees.  As of May 17, 2018, Plaintiff's attorneys had billed 138.9 hours at a rate of $400 per hour, totaling $55,560.  (*See* Plaintiff's Bills 123-27.) Regardless of whether Plaintiff had a reasonable expectation to obtain an award of attorney's fees covering all of this work, $55,000 is more than three times the $15,000 Defendant offered, thus justifying Plaintiff's rejection.

In response, Defendant notes that Plaintiff prevailed only on 25 percent of the claims Plaintiff originally pursued in the OAH proceedings, so Plaintiff's calculation of attorney's fees should be correspondingly reduced.  Defendant argues that the Court should use the reduced attorney's fees—not Plaintiff's actual fees at the time of the offer—when determining whether Plaintiff was reasonably justified in rejecting Defendant's settlement offers.  But Defendant's argument assumes that when Plaintiff received the settlement offers in April and May of 2018, Plaintiff had the benefit of the ALJ's Decision that was issued in January of 2019.  Reasonableness is determined at the time of the offer, so incorporating the ALJ's future decision is an inappropriate method to use when evaluating whether Plaintiff's rejection of Defendant's offer was reasonable.

Therefore, Plaintiff was reasonably justified in rejecting Defendant's settlement offer and is entitled to reasonable attorney's fees.

    D.    <u>Calculation of Plaintiff's Award of Attorney's Fees</u>

As mentioned, an award of attorney's fees begins with calculating the lodestar, or the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *See Hensley*, 461 U.S. at 433.

    1.    <u>Reasonable Hourly Rate</u>

The parties dispute whether Plaintiff's proposed hourly rates of $400 per hour for both Punam Grewal and Michelle Powers and $425 for David Greco are reasonable.  IDEA requires an award of attorney's fees to be "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415 (i)(3)(C).  The court may rely on declarations and similar past cases when determining whether counsel's rates are reasonable.  *See Sam K. ex rel. Diane C. v. Hawaii Dep't of Educ.*, 788 F.3d 1033, 1041 (9th Cir. 2015).

Plaintiff states that Punam Grewal's rate of $400 per hour is reasonable.  (*See* Decl. of Punam Grewal in Support of Pl.'s Mot. for Att'y Fees ("Grewal Decl.") ¶ 7, ECF No. 92-5.) Ms. Grewal has handled approximately one hundred special education matters against various school districts,

JS-6                          **UNITED STATES DISTRICT COURT**
                              **CENTRAL DISTRICT OF CALIFORNIA**

                              **CIVIL MINUTES - GENERAL**


**CASE NO.:  CV 18-01017 SJO (SHKx)**          **DATE:  October 21, 2019**

charter schools, county offices of education and other local education agencies in all areas of
representation. (Grewal Decl. ¶ 10.) Ms. Grewal has also trained the Riverside County Office of
the Public Defenders on the topics of Defending Juveniles with Special Needs through IDEA &
the Welfare and Institution's Code and Avoiding the Playground to Prison Pipeline.  (Grewal Decl.
¶ 13.)

Defendant argues that Ms. Grewal's rate of $400 per hour is unreasonable.  (Def.'s Opp'n to Pl.'s
Mot. for Att'y Fees 17.)  To support its position, Defendant points to a case Plaintiff submits in its
Request for Judicial Notice.[1]  Exhibit A of Plaintiff's RJN is a 2016 case (the most recent case
Plaintiff submits) from the Central District of California where the court considered the fees of
Plaintiff's attorneys. In *J.H. v. Riverside County Office of Education*, EDCV 14-804 MWF (C.D.
Cal. Mar. 8 2016), the court analyzed Ms. Grewal's hourly rate and set it at $225 per hour.  The
court noted that Ms. Grewal's experience is primarily in the areas of criminal and juvenile defense.
However, Ms. Grewal's declaration states that she has now handled approximately one hundred
special education, and three years have passed since the decision in *J.H.*  Therefore, the Court
finds it reasonable to set Ms. Grewal's hourly rate at the $275 per hour.

Plaintiff next asserts that Michelle Powers' rate of $400 is also reasonable.  (Decl. of Michelle
Powers in Support of Pl.'s Mot. for Att'y Fees ("Powers Decl.") ¶ 13, ECF No. 92-6.)  Ms. Powers
explains that the majority of her time from January 2012 to today has been devoted exclusively
to the representation of special education students under IDEA law.  (Powers Decl. ¶ 8.)
Defendant also challenges Ms. Powers's hourly rate by comparing Ms. Powers's rate, who has
been practicing for 12 years, to that of Ms. Grewal, who has been practicing for 15 years.  Even
though Ms. Powers has been practicing for 3 fewer years than Ms. Grewal, it appears that Ms.
Powers's practice since 2012 has been devoted exclusively to special education work, whereas
Ms. Grewal's practice includes other areas of the law.  Therefore, the Court finds it reasonable
to also set Ms. Powers's hourly rate equal to that of Ms. Grewal: $275 per hour.

Plaintiff states that David Greco bills at a rate of $425 per hour and explains that this is
reasonable in light of his academic credentials, expertise, and experience.  (Decl. of David G.
Greco in Support of Pl.'s Mot. for Att'y Fees ("Greco Decl.") ¶¶ 5-13, ECF No. 92-4.)  Mr. Greco

---

[1]  Plaintiff filed a Request for Judicial Notice for the Court to notice five cases that support
Plaintiff's request for fees. (*See* Request for Judicial Notice ("RJN"), ECF No. 92-2.)
Federal Rule of Evidence 201(b)(2) permits courts to take judicial notice of facts that are
"not subject to reasonable dispute" in that they are "capable of accurate and ready
determination by resort to sources whose accuracy cannot reasonably be questioned."
Fed. R. Evid. 201(b)(2).  A court may take judicial notice of court filings and other matters
of public record. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir.
2006). Judicial notice of the court records is appropriate here because they are public
records and are not subject to dispute, as Defendant also cites to these cases.
Accordingly, the Court **GRANTS** Plaintiff's Request for Judicial Notice.

**JS-6**                    **UNITED STATES DISTRICT COURT**
                            **CENTRAL DISTRICT OF CALIFORNIA**

                            **CIVIL MINUTES - GENERAL**


**CASE NO.:  CV 18-01017 SJO (SHKx)          DATE:  October 21, 2019**

graduated *magna cum laude* from the University Of San Diego School Of Law, participated in the school's law review, and received awards.  (Greco Decl. ¶ 5.)  Mr. Greco also has worked on a Supreme Court case and has been successful in other appellate matters. (Greco Decl. ¶ 7.)  He teaches students Federal Rules of Civil Procedure, the Federal Rules of Evidence, and standards governing appeals.  (Greco Decl. ¶ 9.)

However, Mr. Greco has only been practicing 4.5 years.  (Greco Decl. ¶ 9.)  While his declaration notes his impressive credentials in law school and as an educator, Mr. Greco is not nearly as experienced in the area of special education law as are Ms. Grewal and Ms. Powers. Therefore, the Court sets Mr. Greco's hourly rate at $225 per hour.

Plaintiff submitted the Declaration of Tania Whiteleather in support of Plaintiff's attorney's fees motion.  (Decl. of Tania Whiteleather in Support of Pl.'s Mot. for Att'y Fees, ECF No. 92-7.)  However, Ms. Whiteleather's declaration does not change the Court's analysis due to its self-service nature.  *Sam K. v. Hawaii Dep't of Educ.*, 788 F.3d 1033, 1041 (9th Cir. Haw. 2015) ("That other attorneys may think that a given rate is 'reasonable' does not necessarily say what the prevailing market rates actually are. That is especially true when the opinion are expressed by attorneys whose own professional interests might motivate them to favor higher rates.").

Therefore, the Court sets the following hourly rates:

- • Ms. Grewal:        $275 per hour
- • Ms. Powers:        $275 per hour
- • Mr. Greco:         $225 per hour

    2.    <u>Hours Reasonably Expended on the Litigation</u>

Next, the Court must determine the hours Plaintiff's attorneys reasonably expended on the litigation.  Plaintiff states that Ms. Powers and Ms. Grewal have billed a combined 394.30.  (Pl.'s Mot. for Att'y Fees, Ex. F.)  Mr. Greco has billed a total of 56.9 hours, which includes Mr. Greco's total hours billed as listed in Exhibit D and the 17 hours for Plaintiff's Motion for Attorney's fees.  (Pl.'s Mot. for Att'y Fees 11, Ex. D.)

"A district court has wide latitude in determining the number of hours that were reasonably expended."  *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001).  The court should only compensate the prevailing party for hours that would reasonably be billed to a private client.  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013)  This means a court should exclude time entries that are "excessive, redundant, or otherwise unnecessary."  *Id.* (quoting *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2008)).  A district court may impose a ten-percent reduction in the amount of the attorney's fee award "based on its exercise of discretion and without a more specific explanation" as to which fees were duplicative or unreasonable.  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

**JS-6**
## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

**CASE NO.:  CV 18-01017 SJO (SHKx)          DATE:  October 21, 2019**

A court reviewing billing entries for reasonableness may reduce the bill in one of two ways, depending on the type of bill at issue.  *Gonzalez*, 729 F.3d at 1203.  A court may review the bill line-by-line and subtract hours that would not be reasonable to compensate.  *See id.*  But if the fee application is voluminous, the court may make across-the-board percentage cuts to avoid the time-intensive review of each time entry.  *See id.*  Because the fee request here is long and involves dozens of time entries, the Court will, if necessary, apply a percentage cut to the total hours billed.

Defendant highlights specific entries it claims are unreasonable, which include clerical work and excessive entries for certain tasks.  (Def.'s Opp'n to Pl.'s Mot. for Att'y Fees 16-17.)  Defendant also notes that Plaintiff stated Plaintiff is seeking over 16 hours of work related to the Ninth Circuit appeal, even though Plaintiff unequivocally states that Plaintiff is seeking those fees in a separate motion in front of the appellate court.  (Pl.'s Mot. for Att'y Fees 4.)  Plaintiff does not deny this allegation.  Having reviewed the parties' positions on the challenged entries, the Court concludes that it is reasonable to reduce the total number of hours Plaintiff expended on the litigation by 10%.

The Court finds it reasonable to further reduce the fees by an additional 10% for the legal work that resulted in unnecessary filings and re-filings.  For example, Plaintiff first filed an *ex parte* application, but the Court denied the application because Plaintiff failed to file the administrative record for this Court to review.  (*See Ex Parte* App., ECF No. 4; Min. Ord. Denying *Ex Parte* App.)  This resulted in Plaintiff's second *ex parte* filing, along with the memorandum of points and authorities and a request for judicial notice.  (Amendment to *Ex Parte* App., ECF No. 16, Memo. in Support of *Ex Parte* Application, ECF No. 17; Request for Judicial Notice RE *Ex Parte* Application, ECF No. 18.)  But even this filing was deficient, because, among other issues, Plaintiff did not provide notice to Defendant.  (Notice to Filer of Deficiencies, ECF No. 19.)  The Court finds it reasonable to further reduce the number of hours reasonably expended on the litigation by an additional 10%, for a total of a 20% reduction in the hours billed.

Therefore, the Court reduces Plaintiff's hours billed as follows:

- Ms. Grewal and Ms. Powers:     394.30 X 0.8 = 315.44
- Mr. Greco:          56.9    X 0.8 = 45.52

Multiplying these hours billed by the previously determined reasonable hourly rates yields the following fee award:

- Ms. Grewal and Ms. Powers:     315.44 hours X $275/hour = $86,746
- Mr. Greco:          45.52 hours   X $225/hour = $10,242
- Total                      = $96,988

JS-6                         **UNITED STATES DISTRICT COURT**
                              **CENTRAL DISTRICT OF CALIFORNIA**

                              **CIVIL MINUTES - GENERAL**


**CASE NO.:** __CV 18-01017 SJO (SHKx)__         **DATE:** __October 21, 2019__

                3.    <u>Downward Variation from the Lodestar</u>[2]

The $96,988 figure is not the end of the analysis; once the court calculates the lodestar, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434. Where a plaintiff succeeds only on some of the original claims pursued, the court must first consider whether "the plaintiff failed to prevail on claims that were unrelated to the claims on which he succeeded." *Id.* Unrelated claims are those that are "entirely distinct and separate" from the claims on which the plaintiff prevailed. *Sorenson*, 239 F.3d at 1147. If the hours are related, the second question is whether the Plaintiff "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 434.

In the OAH proceedings, the ALJ considered 11 issues and sub-issues, and Plaintiff succeeded on issues 1(c), 2(a), and 2(b). (ALJ Decision 63.) The Court finds that the issues on which Plaintiff prevailed rely on a complete knowledge of Plaintiff's educational history, and this understanding overlaps with the issues on which Plaintiff lost. As Plaintiff notes, each IEP builds on the student's prior IEP, so the professionals developing the student's subsequent IEP are required to have a working understanding of all of the student's prior educational plans. This is reflected in the statutes governing the formation of a student's IEP. *See* 34 C.F.R. § 300.324(a)(1) ("In developing each child's IEP, the IEP team must consider . . . (iii) the results of the initial or most recent evaluation of the child . . . ."); 34 C.F.R. § 300.324(b)(1)(ii) (requiring periodic review and revision of prior IEPs). Plaintiff's attorneys were required to trace the IEP professionals steps through the prior IEP's to determine whether the subsequent IEP's addressed Plaintiff's educational needs. Plaintiff prevailed on Issue 2(b), which required Plaintiff's attorneys to review all of Plaintiff's IEP's through May 2018. Given the inextricable nature of the issues presented to the ALJ, no issue is "entirely distinct and separate" such that the hours spent on those issues can be separated and excluded from Plaintiff's fee award.

The question then becomes whether Plaintiff's level of success warrants the Court awarding Plaintiff fees for all of the hours expended on the litigation. *Hensley*, 461 U.S. at 434. The ALJ considered 11 of Plaintiff's issues and sub-issues, but this ignores the fact that Plaintiff "withdrew Issues 1(d), 1(g), 1(i), 3, 7, 8, and 9 at the start of the OAH hearing." (ALJ Decision 2, fn. 2.) In total, Plaintiff filed a complaint with the OAH pursuing 18 issues and sub-issues but only succeeded on 3 out of 18 issues originally pursued. (ALJ Decision 63.)

---

[2] In addition to the parties' arguments addressed below, Defendant argues that Plaintiff unreasonably protracted the litigation and acted in bad faith. (Def.'s Opp'n to Pl.'s Mot. For Att'y Fees 9-12, 18-22.) The Court finds that Plaintiff did not unreasonably protract the litigation, as Plaintiff's Reply brief adequately justifies Plaintiff's actions. The Court addresses and rejects Defendant's bad faith argument in the section below that analyzes Defendant's Motion for Sanctions.

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  CV 18-01017 SJO (SHKx)          **DATE:**  October 21, 2019

While this mere numerical calculation does not prove that Plaintiff's success was limited, reviewing the issues presented to the ALJ and the results obtained support this conclusion. Plaintiff lost the central issue of whether Defendant failed to offer Plaintiff a FAPE by offering Plaintiff placement at Flabob.  This was issue that prompted the litigation, as Defendant sought to place Plaintiff in Flabob, but Plaintiff fought to remain at Prentice.  It appears from the focus of the litigation in the district court that Plaintiff's central aim was to remain at Prentice despite Defendant's attempt to stop funding Plaintiff's attendance there.  And on this issue, Plaintiff lost.

Moreover, Plaintiff's final award pales in comparison to Defendant's May 17, 2018 settlement offer. As discussed, Defendant offered Plaintiff $45,000, but in the end, the ALJ awarded Plaintiff only $9,600 for compensatory education plus nominal travel costs. When viewed in this light, Plaintiff's success in the OAH proceedings was quite limited.

Plaintiff's success in district court, however, was nearly complete.  Plaintiff's complaint alleged declaratory relief and an injunction that Prentice was Plaintiff's Stay Put, and a cause of action for disability discrimination.  (*See generally* Compl.)  Plaintiff's FAC and SAC dropped the disability discrimination claim and focused on the Stay Put and attorney's fees.  Plaintiff undoubtedly obtained a complete victory on this issue that is clear from this Court's order and the Ninth Circuit's affirmation.  Plaintiff's withdrawing the disability discrimination claim is immaterial because the parties barely litigated that issue, so the hours expended on that claim alone are nominal.

Based on Plaintiff's succeeding on only 3 of 18 issues in the OAH proceedings but the winning on the Stay-Put claim, the Court finds it appropriate to reduce Plaintiff's overall fee award by 30%. The Court believes this figure roughly captures Plaintiff's significant failure in the OAH proceedings but success in this Court, as well as the other considerations identified above.

There is additional support for the Court's reduction of Plaintiff's fee award: even though Plaintiff was substantially justified in rejecting Defendant's statutory settlement offers, the work that Plaintiff's attorney's conducted after rejecting Defendant's offers failed to put Plaintiff in a better position than Plaintiff would have been by accepting the offers.  In other words, the vast majority of Plaintiff's attorney's fees incurred after rejecting Defendant's settlement offers could have been avoided and did not further Plaintiff's case.  For this reason, the Court finds the 30% reduction appropriate.

The Court recognizes the imprecise nature of the 30% reduction, but it emphasizes that the Court has substantial deference in reaching a fee award. As the Supreme Court explained:

> [T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these

JS-6                    **UNITED STATES DISTRICT COURT**
                         **CENTRAL DISTRICT OF CALIFORNIA**

                         **CIVIL MINUTES - GENERAL**


**CASE NO.:  CV 18-01017 SJO (SHKx)          DATE:  October 21, 2019**

determinations, in light of "the district court's superior understanding of the
litigation."

*Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley*, 461 U.S. at 434).  Based on Plaintiff's
limited success and the Court's "overall sense of [the] suit," the Court reduces the $96,988 award
by 30%.  Therefore, Plaintiff's award is reduced to $67,891.60.

II.    DISCUSSION OF DEFENDANT'S MOTION FOR SANCTIONS AND PLAINTIFF'S
       MOTION TO STRIKE DEFENDANT'S MOTION FOR SANCTIONS

Defendant filed a Motion for Sanctions, and Plaintiff filed a Motion to Strike Defendant's Motion
for Sanctions.  As discussed below, the Court **DENIES** Plaintiff's Motion to Strike Defendant's
Motion for Sanctions as procedurally improper.  The Court also **DENIES** Defendant's Motion for
Sanctions because Plaintiff's statements do not warrant the extreme remedy of sanctions.

       A.    Motion to Strike

Plaintiff moves to strike Defendant's motion for sanctions, arguing that Defendant filed the motion
in violation of this Court's order.  On June 18, 2019, after denying motions to continue, the Court
stated, "At this late stage of litigation, the Court will not permit Defendants or Plaintiff to further
amend the pleadings or delay the closing of the instant case."  (Minutes, ECF No. 116.)  Plaintiff
asserts that Defendant's Motion for Sanctions, re-filed on September 3, 2019, violated this Court's
order.

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient
defense or any redundant, immaterial, impertinent, or scandalous matter."  The Ninth Circuit has
highlighted that under Rule 12(f), "only pleadings are subject to motions to strike."
*Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  Pleadings are defined in
Federal Rule of Civil Procedure 7(a), and that rule makes no mention of briefs or motions. *See
Gottesman v. Santana*, 263 F. Supp. 3d 1034, 1042 n.5 (S.D. Cal. 2017) (noting that briefs are
not pleadings under Rule 7(a) and therefore not subject to Rule 12(f)).

Therefore, the Court **DENIES** Plaintiff's motion to strike as procedurally improper because motions
under 12(f) do not apply to a motion for sanctions, such as Defendant's.

       B.    Legal Standards

Under Federal Rule of Civil Procedure 11, a party filing a pleading, written motion, or other
document lodged with the court "certifies that to the best of the person's knowledge,
information, and belief, formed after an inquiry reasonable under the circumstances": (1) the
document is not being presented for any improper purpose; (2) the claims, defenses, and
other legal contentions are warranted by existing law or by a nonfrivolous extension of the law,
and (3) the factual contentions have evidentiary support. Fed. R. Civ. Proc. 11.  If the court
determines that, after notice and a reasonable opportunity to respond, a party has violated

**JS-6**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   CV 18-01017 SJO (SHKx)**          **DATE:  October 21, 2019**

Rule 11(b), the court may impose an appropriate sanction.  *Id.*

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution."  *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988).  "The court has significant discretion in determining what sanctions, if any, should be imposed for a violation." Fed. R. Civ. P. 11(b) advisory committee's notes on the 1993 amendments.  Sanctions are warranted when it was not objectively reasonable for the signer to file the documents.  *Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 892 F.2d 802, 808 (9th Cir. 1989).

"[Section 1927] permits a federal district court to sanction an attorney personally who multiplies the proceedings in any case unreasonably and vexatiously." *Estate of Blas Through Chargualaf v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986) (internal quotation marks omitted); *see* 28 U.S.C. § 1927. "Section 1927 sanctions require a bad faith finding," *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir. 1990) (citing Soules v. Kauaians for Nukolii Campaign Comm., 849 F.2d 1176, 1185 (9th Cir. 1988)), and "[a] district court may impose sanctions under [S]ection 1927 only on a showing of the attorney's recklessness or bad faith." *Estate of Blas*, 792 F.2d at 860 (citation omitted). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument . . . or argues a meritorious claim for the purpose of harassing an opponent." *Id.* (citations omitted).

C.    Analysis

Defendant argues that newly discovered facts demonstrate that Plaintiff's filings contained factual misrepresentations warranting sanctions.  (*See generally* Def.'s Mot. for Sanctions.) Defendant obtained an email from Plaintiff's mother to Prentice staff that shows that Plaintiff's mother withdrew Plaintiff from Prentice prior to the May 2018 hearing on the request for the temporary restraining order.  The email reads as follows:

> Cassandra was sick Monday and Tuesday but is better today. Unfortunately though she will be out the reminder of the week. Our attorneys have advised us that we will not be successful in federal court getting the injunction against Riverspings [sic] (which will require them to continue to fund Prentice until the due process hearing sometime this summer) if Cassandra is attending Prentice under our funding when they go to federal court for the injunction (or successful in obtaining reimbursement for tuition paid to Prentice by us.) Thus she has to be out of placement when they go to federal court this week. It was truly a heart wrenching and difficult decision for Paul and me. As an attorney I understand but as a mom this is all extremely difficult. We are not so much concerned about the financial reimbursement for this year as we are the long term . . . If we are unsuccessful getting the injunction we will give River Springs Notice that we intend to private pay and Cassandra will immediately return to Prentice. If we are

JS-6                          **UNITED STATES DISTRICT COURT**
                              **CENTRAL DISTRICT OF CALIFORNIA**


                          **CIVIL MINUTES - GENERAL**



**CASE NO.:  CV 18-01017 SJO (SHKx)          DATE:  October 21, 2019**

successful in getting the injunction this week Cassandra will return immediately
to Prentice under River Springs funding.

Defendant argues that Plaintiff's mother's decision to voluntarily withdraw Plaintiff from
Prentice prior to the hearing contradicts sworn statements Plaintiff was "unable to access her
education" due to Defendant's decision to deny funding to Prentice for Plaintiff's education.
(*See* Def.'s Mot. for Sanctions 8-10.)

Despite Defendant's arguments, Plaintiff's mother's statements are accurate; Plaintiff was
unable to access her education as required by statute.  IDEA "requires the school district to
keep children in their current educational placement" during the pendency of litigation.  *Joshua
A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1038 (9th Cir. 2009); 20 U.S.C. § 1415(j). The
law assigns that burden to school districts, not parents.  So even though Plaintiff's mother had
the means to keep Plaintiff in school, she had no obligation to do so, thus supporting her
statement that Defendant's actions prevented Plaintiff from accessing schooling at Prentice.
The fact that Plaintiff's parents had the means to soften the blow of Defendant's unlawful
decision to terminate funding does not invalidate Plaintiff's statement that Plaintiff could not
access Plaintiff's education as required under the law.

Plaintiff's mother's declaration illustrates this point.  Plaintiff's mother states that she "was
forced, as a result of Charter School's decision to remove C.Q. from Prentice, to keep C.Q.
home." (Quezada Dec. at ¶ 13.)  Defendant claims Plaintiff is lying because Plaintiff was not
forced to leave school, and instead could have paid to keep Plaintiff in Prentice.  But Plaintiff
had no obligation to pay to stay in Prentice, as that burden falls on Defendant.  Therefore,
Defendant effectively forced Plaintiff to leave Prentice, making Plaintiff's statement true.

Given the nuances of this issue, it cannot be said that Plaintiff's statements warrant sanctions,
which are "an extraordinary remedy, one to be exercised with extreme caution," *Operating
Eng'rs*, 859 F.2d at 1345.  Just as the Court concludes that sanctions are not warranted under
Rule 11, so too the Court concludes that the alleged misrepresentations do not justify
sanctions under 28 U.S.C. § 1927.  Sanctions under § 1927 require a bad faith finding, and
the record does not support such a conclusion.

Therefore, the Court **DENIES** Defendant's Motion for Sanctions.

III.    <u>RULING</u>

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiff's Motion for Attorney's Fees
(ECF No. 92) and awards Plaintiff $67,891.60. The Court also **DENIES** Defendant's Amended
Motion for Attorney's fees (ECF No. 122), **DENIES** Defendant's Motion for Sanctions (ECF No.
138), and **DENIES** Plaintiff's Motion to Strike Defendant's Motion for Sanctions (ECF No. 140).

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  **CV 18-01017 SJO (SHKx)**          **DATE:**  **October 21, 2019**

Given that this order dispenses with the remaining issues in this case, this case shall close. The Court shall not consider any redundant motions, applications, or notices and may strike any redundant pleadings on its own initiative.

IT IS SO ORDERED.