FILED

NOV 21 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| C. Q., a minor, by and through Guardians Ad Litem Saku Quezada and Pablo Quezada,<br><br>        Plaintiff-Appellee,<br><br> v.<br><br>RIVER SPRINGS CHARTER SCHOOLS, a California Local Education Agency,<br><br>        Defendant-Appellant. | No.   18-55779<br><br>D.C. No.<br>5:18-cv-01017-SJO-SHK<br>Central District of California, Riverside<br><br>ORDER |

Before: Peter L. Shaw, Appellate Commissioner.

I
Background

An Administrative Law Judge ("ALJ") denied appellee C.Q.'s motion to stay put at the school she was currently attending, Prentice, and failed to determine C.Q.'s then-current educational setting pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* C.Q. filed a complaint in the district court and a motion for preliminary injunctive relief challenging the ALJ's decisions. The district court granted the motion for injunctive relief.

Appellant River Springs Charter Schools ("River Springs") appealed, and this court affirmed, finding that the district court did not abuse its discretion by granting injunctive relief.

C.Q. filed a motion for attorneys' fees. River Springs opposed the motion contending, among other grounds, that C.Q. was not a prevailing party, C.Q. unjustly rejected the settlement offers made by River Springs before C.Q. appealed, an award of fees would be unjust, and the parties had a binding settlement agreement on February 15, 2019. The panel rejected these contentions by granting the fee request. River Springs also contended that some of the claimed time was unreasonable or excessive and that the claimed hourly rates were unreasonable. The panel referred to the Appellate Commissioner a determination of the proper amount of fees to award.[1]

## II
## Analysis

A    Applicable Law and Fee Request

The IDEA provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party." 20 U.S.C. § 1415(i). The court may reduce the

---

[1] The motions for judicial notice filed by C.Q. (Docket Entry No. 44) and River Springs (Docket Entry No. 47) are granted.

fee award where "the amount of attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience," or "the time spent and legal services furnished were excessive considering the nature of the action or proceeding." *See id.*; *see also Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

C.Q. seeks attorneys' fees of $47,692 based on 132.2 hours of work by these timekeepers at the following hourly rates: David Greco, Esq., at $365, $400, and $425; Michelle Powers, Esq., at $400; Punam Grewal, Esq., at $400; and paralegal services at $185 and $195.

B      Reasonable Hours

1      Preparing Answering Brief

River Springs contends that C.Q. claims an unreasonable amount of time for researching and writing the answering brief. Greco spent approximately 33.2 hours on legal research and 57.2 hours drafting the answering brief. The contention lacks merit.

River Springs argues that the time claimed is excessive because its own attorneys spent only 43.6 hours researching and writing the opening brief. But time spent by River Springs's counsel on briefing is not an unassailable metric by

which to gauge a reasonable number of hours spent on a similar task by C.Q.'s attorneys, especially considering that C.Q. ultimately prevailed in this appeal. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (opposing counsel's billing records are relevant, but not dispositive to determining a reasonable number of hours expended); *Ferland v. Conrad Credit Corp.*, 244 F. 3d 1145, 1151 (9th Cir. 2001) (time spent by opposing party may not indicate whether prevailing party's time was reasonable); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.").

C.Q.'s answering brief addressed the appropriate standard of review for an ALJ's failure to determine a student's stay-put placement--an issue that had not been resolved in this circuit--and then discussed whether the district court erred under the two possible standards of review. The analyses depended on a record involving medical evidence, administrative proceedings, and factual findings by the district court, in the face of evidentiary objections and differing characterizations of the record by River Springs. The answering brief is well-written, concise, and aptly discusses the applicable law, facts, procedural

history, and issues on appeal. Given the record, evidence, and the complexity of the legal issues on appeal, the number of hours expended preparing the answering brief is reasonable. Aside from its assertion that its attorneys did not spend as much time on briefing as did C.Q.'s attorneys, River Springs does not present any argument or evidence showing that the time expended on this task was excessive. The claimed hours are awarded.

    2       Oral Argument

River Springs contends that C.Q. claims unnecessary fees for 10 hours expended by Powers and Grewal preparing for and traveling to oral argument, at which Greco argued. This contention lacks merit.

The suggestion that Powers and Grewal provided unnecessarily duplicative services by attending oral argument lacks merit because they represented C.Q. in the administrative and district court proceedings, and their assistance might have been needed by Greco. *See Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286-87 (9th Cir. 2004) (participation by several attorneys for oral argument is not unreasonable if their assistance may be needed or they worked on the case previously). River Springs is incorrect that the time Powers and Grewal claim for travel related to oral argument is not compensable. In Los Angeles, the practice in the community is to bill travel time at full rates. *See Rodriguez v. Cnty.*

*of Los Angeles*, 96 F. Supp. 3d 1012, 1025 (C.D. Cal. 2014).  Finally, the total time claimed for oral argument tasks is approximately 10.7 hours, which is reasonable, especially considering that C.Q. does not request compensation for Greco's time preparing for and attending oral argument.

    3       Consultations

River Springs also contends that C.Q. claims excessive fees for approximately 1.4 hours expended by Powers and Grewal to communicate with Greco and with C.Q., and 3.4 hours expended by Greco to consult with Powers and Grewal.  The contention lacks merit.

C.Q.'s billing entries show that Powers and Grewal telephonically consulted with Greco prior to oral argument concerning oral argument preparation and preparing an opposition to a motion to set aside the temporary restraining order.  Given that Powers and Greco represented C.Q. in the district court, their contributions and discussions were reasonably necessary to the tasks.  *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1112 (9th Cir. 2014) (work by several timekeepers is not necessarily inappropriate); *Moreno*, 534 F.3d at 1112 (duplicative work may be necessary).  Furthermore, because they represented C.Q. in previous proceedings, the claim of 0.4 hours by Powers and Grewal to communicate with C.Q. is reasonable and is awarded.

Greco claims 1.8 hours for consulting with Powers and Grewal on August 2, 2018 regarding the answering brief, 0.4 hours on August 13, 2018 concerning an amicus brief that was to be submitted the next day, and 1.2 hours on October 15, 2018, after the court had sent out its notice of oral argument.  Greco reasonably consulted with co-counsel during critical events in the appeal--during preparation of the answering brief, when an amicus brief was to be filed, and before oral argument--in order to solicit their input or advice, keep them updated on the status of the appeal, and plan their availability or obtain their assistance for oral argument.  *See Chaudhry*, 751 F.3d at 1112; *Moreno* 534 F.3d at 1112.  River Springs's speculation that these conferences served as training for Greco is unsupported and implausible, given that Greco conducted these conferences after most of the work on the answering brief had concluded.  The amount of time claimed for the tasks is reasonable and is awarded.

4   Paralegal Tasks

River Springs contends that C.Q. claims fees for clerical tasks that should not be compensated.  This contention has merit.

River Springs notes that C.Q. requests compensation for a number of paralegal billing entries, most of which are of 0.2 hours in length, to "Analyze and process" various documents from the court and opposing counsel.  It is apparent

from the description of the tasks and the time claimed that the tasks involved little more than receipt of the documents and filing them, distributing them to other individuals, or calendaring deadlines.  Tasks of this nature are clerical and are customarily subsumed in firm overhead, rather than billed to a client or adversary at attorney hourly rates.  *See Tr. of Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins.*, 460 F.3d 1253, 1257 (9th Cir. 2006); *Action on Smoking & Health v. CAB*, 724 F.2d 211, 222 (D.C. Cir. 1984).  The billing records show that C.Q. claims fees for analyzing and processing documents of 1.6 hours from June 21, 2018 to July 18, 2019 at an hourly rate of $195,[2] and 4.2 hours from August 14, 2018 to January 8, 2019 at an hourly rate of $185.[3]  The time for these tasks is not awarded.

C.Q. also claims time for other clerical tasks, including formatting, binding, printing, mailing, and filing documents; requesting records; communicating with court personnel concerning document filing requirements or status of proceedings; and communications with co-counsel, opposing counsel, and others regarding

---

[2] Billing slip ID nos. 198262, 198470, 199032, 199275, 199415, 199542, and 199543.

[3] Billing slip ID nos. 200738, 200824, 200852, 200868, 201082, 201202, 201246, 201461, 201582, 201975, 202122, 202207, 202456, 202624, 203309, 204058, 205629, 206169, 206240, 207874, and 208504.

payment, invoices, and printing of documents. The billing records show that those tasks comprise 0.6 hours at an hourly rate of $195 from June 21 to July 16, 2018;[4] and 3.8 hours at an hourly rate of $185 on August 8, 2019 (0.3 of 0.6 hours) and November 13, 2018 (0.3 of 0.6 hours), and from August 9, 2018 to November 16, 2018 (3.2 hours).[5]

River Springs also contends that fees claimed for paralegal time to process Greco's admission to the Court's bar are not compensable. This contention has merit.

Greco's Ninth Circuit bar admission was a prerequisite to appearing in the court, and it benefits him as well as future clients other than C.Q. Its cost should be subsumed in overhead rather than billed to C.Q. or awarded against River Springs. *See Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."). An attorney's admission to the Ninth Circuit bar is a cost of doing business not chargeable to a client or recoverable in a fee award. *See Missouri v. Jenkins*, 491 U.S. 274, 1256-57 (1989) (hourly rate takes into account firm

---

[4] Billing slip ID nos. 198261, 198381, 199402, and 200542.

[5] Billing slip ID nos. 200590, 200593, 200594, 200649, 200771, 200825, 201593, 203157, 203253, 205029, 205188, 205232, 205239, and 205290.

expenses contributing to work product).  A total of 0.8 hours are attributable to paralegal time at $195 per hour for this task on June 19 and July 12, 2018 (Billing slip nos. 198101 and 199276).  The time is not awarded.

River Springs next contends that paralegal time to assist in preparing an opposition to ex parte motion for reconsideration filed in district court should not be compensated, presumably because the work was performed for a filing made in the district court.  The contention lacks merit because the task was in aid of and related to the temporary restraining order and this appeal.  The time for these tasks, except as it relates to clerical work discussed above, is awarded.

C        Reasonable Hourly Rates

River Springs contends that the hourly rates claimed by C.Q.'s attorneys are excessive.  This contention lacks merit.

A prevailing party must show that the claimed rates are "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum*, 465 U.S. at 895 n.11.  The proper reference for determining a prevailing rate in a community is the rates charged by attorneys with similar skill, experience, and reputation as the prevailing party's attorney.  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980-81 (9th Cir. 2008).  The party opposing a fee request has the burden to submit contrary

evidence regarding prevailing rates in the community. *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986).

According to Powers's declaration, she was admitted to the State Bar of California in 2007. She is a co-owner, with Grewal, of their law firm, which limits its practice to special education law, IDEA matters, and juvenile and criminal defense. She had previously worked for Legal Aid of Marin, the Office of the City Attorney of San Diego, an education attorney with a private law firm, and at two other law firms. During her 12 years of practice, she has experience in administrative litigation in education matters and civil litigation in federal and state court involving employment, commercial securities law, probate and trust litigation. She has also represented adult and juvenile clients in criminal litigation. After 2011, the vast majority of her representation and litigation practice has been devoted to IDEA law, and has included the representation of incarcerated clients. Her hourly rate is $400.

Grewal's declaration shows that he was admitted to the State Bar of California in 2004 and is co-owner, with Powers, of their law firm. He previously was a managing partner in two different law firms, a deputy district attorney for San Bernadino County, an associate attorney with a law firm, and general counsel for a corporation. He has experience in representing clients in IDEA

administrative proceedings, and juvenile and adult criminal proceedings. He has handled about 100 special education matters, including federal appellate proceedings, representing students from ages 5 to 22 and incarcerated clients. He also has represented clients in child custody and visitation matters. He conducted a workshop with the Riverside County Office of the Public Defenders on defending juveniles with special needs. His billing rate is $400.

      C.Q. attached to the fee motion a declaration by Tania Whiteleather, a Southern California attorney admitted to the State Bar of California in 1989 whose practice focuses on the civil rights of disabled children and young adults relating to their education, including appellate representation in federal courts. Her billing rate is $500. She monitors current hourly rates paid to attorneys who represent disabled students against school districts and reviews federal court attorney's fees orders in IDEA cases in Southern California. She has known Powers for 5 years and Grewal for 10 years and knows them to be exceptionally experienced special education attorneys with a deep understanding of the complexity of the relevant law. She opines that their requested rates are reasonable and in line with what other attorneys command for similar work in the Central District of California.

      Greco's declaration states that he was admitted to the State Bar of California in December 2014. He is an attorney at the law firm of RMO, LLP, and opened

and oversees the operations of the firm's branch office in San Diego.  His practice includes trust and estate work, child abuse matters, and special education issues in district and appellate courts.  He was an associate attorney at two prior law firms, providing legal representation in personal injury, employment claims, corporate probate matters, appellate proceedings, business litigation, class action litigation, and child abuse matters.  He was a volunteer attorney for the Office of the California Attorney General in various employment disputes.  He co-owns a bar exam preparation and law school tutoring company, at which he teaches legal writing, Federal Rules of Civil Procedure and Evidence, and standards governing appeals and appellate review.  He billed the majority of his time in this appeal at an hourly rate of $400.  His billing rate at his firm is $425 and his rate at his previous law firm was $325.

 Powers and Grewal state in their declarations that they know Greco to be an accomplished and talented attorney, and that they asked Greco to handle the appeal because of the serious implications of the case and of their prior experience working with Greco, whom they regularly asked to work on matters with them, including cases involving students with special needs.  They state that Greco quickly and effectively familiarized himself with the relevant law and the issues presented in the appeal.

The billing rates of C.Q.'s attorneys are satisfactory evidence of a reasonable rate. *See Carson v. Billings Police Dept.*, 470 F.3d 889, 892 (9th Cir. 2006) ("That a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is . . . ."). Additionally, Whiteleather's declaration is additional evidence that the requested rates for Powers and Grewal are in line with the prevailing rates in the Central District of California for attorneys with comparable practices and credentials. *See Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991) ("declarations stating that the rate was the prevailing market rate in the relevant community [are] sufficient to establish the appropriate rate"). C.Q. has provided sufficient evidence that the requested hourly rates are in line with those rates of attorneys in the Central District of California with practices, credentials, and experience similar to those of her attorneys. Furthermore, the Appellate Commissioner's evaluation of rates requested in similar appeals suggests that C.Q.'s claimed rates are "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11; *see also Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (courts may rely on their own knowledge of customary rates and their experience concerning reasonable and proper fees).

River Springs contends that Grewal's rate is excessive because a district court in 2016 set an hourly rate of $225 for Grewal for work performed in the district court. *See* Docket Entry No. 44 at 11. River Springs is correct that court-ordered attorney's fee awards are relevant to determining prevailing market rates. *See Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007). The evidence is not determinative, however, because the court there found that Grewal had represented clients in about 20 special education matters and there was no evidence that attorneys with comparable skill and experience had been paid the requested rate. Here, in contrast, the evidence shows that Grewal, Powers, and Greco have billing rates of $400 and $425, and Grewal had represented clients in about 100 special education matters. *See Gonzalez*, 729 F.3d at 1207 (finding that district court did not err by holding that rate determinations in other cases were distinquishable). This evidence, combined with the court's knowledge of reasonable hourly rates in comparable appeals, support Grewal's requested rate.

River Springs also contends that Powers's requested rate is excessive because a court in 2016 set a reasonable hourly rate of $400 for Whiteleather in an IDEA matter, where Whiteleather had more experience at the time than Powers has now. This attenuated argument is insufficient to overcome the evidence supporting Powers' hourly rate.

Finally, River Springs contends that Greco's hourly rates are "grossly excessive." On the contrary, the evidence supports his rates. Furthermore, Greco's credentials and reputation, the complex issues in the litigation, the high quality of his work product, and the excellent result are factors that confirm that hourly rates of 365, $400, and $425 are reasonable for the representation that he provided in this appeal. *See Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1547-48 (9th Cir. 1992), *amended*, 984 F.2d 345 (9th Cir. 1993); *Chalmers*, 796 F.2d at 1210.

The requested rates are reasonable and are awarded.

## III
## Conclusion

Attorneys' fees in the amount of $45,627.00 are awarded in favor of appellee C.Q. and against appellant River Springs Charter Schools.

This order amends the mandate.